Matthew M. Boley (8536)
Jessie E. Dyer (17660)
mboley@ck.law
jdyer@ck.law
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300

Jarrod D. Shaw *(admitted pro hac vice)*
JShaw@McGuireWoods.com
**McGuireWoods LLP**
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
Telephone: (412) 667-6000

Anthony Q. Le *(admitted pro hac vice)*
Ale@McGuireWoods.com
**McGuireWoods LLP**
1800 Century Park East, 8th Floor
Los Angeles, CA  90067-1501
Telephone: (310) 315-8225

Attorneys for Defendants
Celtic Bank Corporation and Celtic Investment, Inc.

<table>
<tr><td colspan="2" align="center"><strong>IN THE UNITED STATES DISTRICT COURT<br>DISTRICT OF UTAH, CENTRAL DIVISION</strong></td></tr>
<tr><td><strong>KARTHIKA MANDYAM, ZAC SCHERRMAN, SEAN DONE, DAVID GRILLO, TYLER SADEK, REGINALD FRANKLIN, DAVID SCHROEDER, TOM ANDERSON, PRAVIN THAKKAR, KMANDY INVESTMENTS, LLC, DRIFTLESS WATER VENTURES LLC, ADVENTURE DONE RIGHT, LLC, ROSEWATER VENTURES, LLC, FOUNDERS MOSAID PARTNERS, LLC, AR WATER SUPPLY, LLC, INDIANA WATER TECHNOLOGY, LLC, SPRUCE WATERS INVESTMENTS, LLC, ROSE TRAIL VENTURES, LLC, AND ROSE TRAIL VENTURES 2, LLC,</strong></td><td><strong>DEFENDANTS CELTIC BANK CORPORATION AND CELTIC INVESTMENT, INC.'S MOTION TO DISMISS THE COMPLAINT</strong><br><br><br><strong>Case No. 2:25-cv-00732-AMA-DAO</strong><br><br><strong>Judge Ann Marie McIff Allen</strong><br><br><strong>Magistrate Judge Daphne A. Oberg</strong></td></tr>
</table>

i

|  |  |
|---|---|
|       **Plaintiffs,**<br><br>**v.**<br><br>**CELTIC BANK CORPORATION,<br>CELTIC INVESTMENT, INC., AND<br>SCOTT FOSTER,**<br><br>      **Defendants.** |  |

ii

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ............................................................................................2

    I.    Plaintiffs Allege WaterStation Perpetrated a Ponzi Scheme. ...............................2

    II.    Plaintiffs Allege Celtic Conspired and Assisted WaterStation with the Scheme Based on Routine Lender/Borrower Activities. .........................................3

    III.    Plaintiffs Allege They Invested in the Scheme.......................................................4

LEGAL STANDARD .......................................................................................................5

ARGUMENT ....................................................................................................................5

    I.    Different State Laws Apply to Plaintiffs' Claims Under Choice of Law Principles, Requiring Dismissal Under Those States' Laws. ...............................5

    II.    Plaintiffs' Common Law Claims Fail Under the Applicable States' Laws. ...........7

        A.    Plaintiffs' Fraud Claim Fails to Sufficiently Plead with Particularity the Required Elements Which is Fatal to Their Claim (Count I). ...........................................................................................7

        B.    Plaintiffs' Allegations Relating to Ordinary Lending Activity Fail to Plausibly Allege Aiding and Abetting Fraud (Count II)......................16

        C.    Plaintiffs Do Not Adequately Allege Fraud, Agreements, or Overt Acts Required for Conspiracy to Commit Fraud (Count III)....................20

        D.    Plaintiffs Do Not Allege a Duty or Breach Sufficient to State a Claim for Negligence or Breach of Fiduciary Duty (Counts IV and V). ...............................................................................................22

    III.    Plaintiffs' Statutory Claims All Fail. ...................................................................26

        A.    Plaintiffs' RICO Claim Fails For Lack of Standing and Failure to Allege the Requisite Elements (Count VI). ...............................................26

        B.    Plaintiffs' Conclusory Allegations Do Not Satisfy Section 10(b)'s High Bar  (Count VII)...................................................................31

        C.    Plaintiffs Cannot Allege a Violation of the UUSA (Count VIII). .............34

        D.    Plaintiffs Fail to Allege the UCSPA Applies to Their Claims (Count IX). ...............................................................................................34

CONCLUSION................................................................................................................35

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albright v. Attorney's Title Ins. Fund*,
  504 F. Supp. 2d 1187 (D. Utah 2007)......................................................................29

*Alcala v. Marriott Int'l, Inc.*,
  880 N.W.2d 699 (Iowa 2016) .................................................................................22

*Amtower v. Photon Dynamics, Inc.*,
  71 Cal. Rptr. 3d 361 (Cal. Ct. App. 2008).............................................................25

*Anderson v. Spirit Aerosystems Holdings, Inc.*,
  827 F.3d 1229 (10th Cir. 2016), *as amended* (July 6, 2016) ...........................32, 33

*Annett Holdings, Inc. v. Kum & Go, L.C.*,
  801 N.W.2d 499 (Iowa 2011) .................................................................................24

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)................................................................................................27

*Arnett v. Arnett*,
  No. 2:13-cv-01121-DN, 2014 WL 2573291 (D. Utah June 9, 2014) ....................13

*Arnson v. My Investing Place L.L.C.*,
  No. 2:12-cv-865, 2013 WL 5724048 (D. Utah Oct. 21, 2013)..............................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................5

*BancOklahoma Mortg. Corp. v. Cap. Title Co.*,
  194 F.3d 1089 (10th Cir. 1999) ...........................................................................5, 30

*Bank v. Rill*,
  No. CIV-07-417FHS, 2008 WL 1766730 (E.D. Okla. Apr. 14, 2008)..................28

*Bartsch v. Costello*,
  170 So. 3d 83 (Fla. Dist. Ct. App. 2015) ...............................................................22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................5

*Bell v. Wells Fargo Bank, N.A.*,
  No. 4:14-CV-388-Y, 2017 WL 6761770 (N.D. Tex. Oct. 13, 2017) ................12, 25

*Berkeley Bank for Cooperatives v. Meibos*,
  607 P.2d 798 (Utah 1980).......................................................................................10

iv

*Bhatia v. Silvergate Bank*,
    725 F. Supp. 3d 1079 (S.D. Cal. 2024)....................................................................16

*Big Thirst, Inc. v. Donoho*,
    657 F. Supp. 3d 914 (W.D. Tex. 2023).....................................................................20

*Bixler v. Foster*,
    596 F.3d 751 (10th Cir. 2010) .................................................................................27

*Boulware v. Baldwin*,
    No. 2:11-CV-762 TS, 2012 WL 1412698 (D. Utah Apr. 23, 2012)........................27

*Careaga v. NewRez LLC*,
    No. 2:21-cv-05314-FLA, 2023 U.S. Dist. LEXIS 33265
    (C.D. Cal. Feb. 28, 2023) ........................................................................................25

*Charter Cent., LLC v. QBE Ins. Corp.*,
    No. 3:24-CV-423-TAV-JEM, 2025 WL 2024910 (E.D. Tenn. July 18, 2025).......24

*Combs v. SafeMoon LLC*,
    No. 2:22-cv-00642-DBB-JCB, 2024 WL 1347409 (D. Utah Mar. 29, 2024) .........33

*Condor, S.A. v. Plurinational State of Bolivia*,
    352 So. 3d 921 (Fla. Dist. Ct. App. 2022) ...............................................................21

*Cook v. Baca*,
    512 F. App'x 810 (10th Cir. 2013) ...........................................................................33

*Cordero v. Olson Assocs. P.C.*,
    740 F. Supp. 3d 1117 (D. Utah 2024).......................................................................34

*Cotte v. CVI SGP Acquisition Tr.*,
    No. 2:21-CV-299, 2022 WL 464307 (D. Utah Feb. 15, 2022)................................35

*Crown Holdings v. Berkley Risk Adm'rs Co., LLC*,
    No. 4:15-cv-00013-SEB-TAB, 2016 WL 559213 (S.D. Ind. Feb. 12, 2016)..........16

*Crystal Valley Sales, Inc. v. Anderson*,
    22 N.E.3d 646 (Ind. Ct. App. 2014).....................................................................20, 21

*Cyprus Amax Minerals Co. v. TCI Pac. Commc'ns, LLC*,
    28 F.4th 996 (10th Cir. 2022) ....................................................................................9

*D'Onofrio v. Vacation Publ'ns, Inc.*,
    888 F.3d 197 (5th Cir. 2018) ....................................................................................25

*De Wit v. FIRSTAR Corp.*,
    879 F. Supp. 947 (N.D. Iowa 1995)..........................................................................12

v

*DeBry v. Valley Mortg. Co.*,
  835 P.2d 1000 (Utah Ct. App. 1992) ......................................................................23

*Dier v. Peters*,
  815 N.W.2d 1 (Iowa 2012) .............................................................................8, 13

*Dixon v. Countrywide Home Loans, Inc.*,
  710 F. Supp. 2d 1325 (S.D. Fla. 2010) ...................................................................11

*Doyle v. Otto*,
  942 N.W.2d 2 (Iowa Ct. App. 2020) .......................................................................25

*Dryden v. Sun Life Assurance Co.*,
  737 F. Supp. 1058 (S.D. Ind. 1989) .......................................................................10

*Eiler Aviation Consultants, Inc. v. PDX VFR, LLC*,
  No. 2:11-CV-332-WTL-DKL, 2012 WL 3065568 (S.D. Ind. July 27, 2012) ..................14, 15

*EMC Nat'l Life Co. v. Emp. Benefit Sys., Inc.*,
  No. 4:10-CV-00143-JEG, 2011 WL 13229648 (S.D. Iowa Mar. 15, 2011) ..........................20

*Est. of Butler v. Maharishi Univ. of Mgmt.*,
  No. 4:06-cv-00072-JEG, 2008 WL 11336336 (S.D. Iowa Sep. 24, 2008) ...........................19

*Faber v. Ciox Health, LLC*,
  331 F. Supp. 3d 767 (W.D. Tenn. 2018) ...................................................................25

*Fid. Nat'l Title Ins. Co. v. Worthington*,
  344 P.3d 156 (Ct. App. Utah 2015) .......................................................................11

*First United Pentecostal Church of Beaumont v. Parker*,
  514 S.W.3d 214 (Tex. 2017) .............................................................................22

*Fortaleza v. PNC Fin. Servs. Grp., Inc.*,
  642 F. Supp. 2d 1012 (N.D. Cal. 2009) ...................................................................19

*Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*,
  461 F. Supp. 2d 629 (M.D. Tenn. 2006) ...............................................................20, 21

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
  No. 12-CV-02432-WYD-KMT, 2013 WL 5448078 (D. Colo. Sept. 27, 2013) .....................35

*Fuller v. Cmty. Nat'l Bank*,
  No. E2018-02023-COA-R3-CV, 2020 WL 1485696
  (Tenn. Ct. App. Mar. 27, 2020) .......................................................................16

*George v. Urb. Settlement Servs.*,
  833 F.3d 1242 (10th Cir. 2016) ..........................................................................5

vi

*Giles v. Min. Res. Int'l, Inc.*,
    338 P.3d 825 (Utah Ct. App. 2014) ...........................................................26

*GJP, Inc. v. Ghosh*,
    251 S.W.3d 854 (Tex. App. 2008) ...........................................................10

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
    352 F.3d 367 (9th Cir. 2003) .................................................................10

*Gonzalez v. Russell Sorensen Constr.*,
    279 P.3d 422 (Utah Ct. App. 2012) ...........................................................22

*Graham v. Bank of Am., N.A.*,
    226 Cal. App. 4th 594 (Cal. Ct. App. 2014) .................................................13

*Greene v. Mongie*,
    564 P.3d 536 (Utah Ct. App. 2025) ...........................................................25

*Grossman v. Novell, Inc.*,
    120 F.3d 1112 (10th Cir. 1997) ..............................................................32

*Guideone Ins. Co. v. U.S. Water Sys. Inc.*,
    950 N.E.2d 1236 (Ind. Ct. App. 2011)........................................................24

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989).............................................................................30

*HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*,
    435 P.3d 193 (Utah 2018) ....................................................................24

*Heavy Petroleum Partners, LLC v. Atkins*,
    457 F. App'x 735 (10th Cir. 2012) .........................................................5, 8

*Honig v. Kornfeld*,
    339 F. Supp. 3d 1323 (S.D. Fla. 2018) ..................................................20, 21

*Huntington Mortg. Co. v. DeBrota*,
    703 N.E.2d 160 (Ind. Ct. App. 1998).....................................................22, 25

*Hussein v. UBS Bank USA*,
    446 P.3d 96 (Utah Ct. App. 2019) ...........................................................25

*In re Brican Am. LLC*,
    No. 10-md-02183-PAS, 2015 WL 11661980 (S.D. Fla. Aug. 4, 2015) ...................17

*In re FTX Cryptocurrency Exch. Collapse Litig.*,
    781 F. Supp. 3d 1324 (S.D. Fla. May 7, 2025) ..............................................18

4915-5085-7077, v. 1

*In re Williams Sec. Litig. WCG Subclass*,
    558 F.3d 1130 (10th Cir. 2009) ................................................................32

*Jaffri v. JPMorgan Chase Bank, N.A.*,
    26 N.E.3d 635 (Ind. Ct. App. 2015)..................................................13, 25

*Janus Cap. Grp. v. First Derivative Traders*,
    564 U.S. 135 (2011) .................................................................................31

*John B. v. Superior Ct.*,
    38 Cal. 4th 1177 (Cal. 2006)...................................................................22

*Johnson v. Heath*,
    56 F.4th 851 (10th Cir. 2022) ...........................................................30, 31

*Jolley v. Chase Home Fin., LLC*,
    213 Cal. App. 4th 872 (2013) ..................................................................23

*Kapoor v. Dybwad*,
    49 N.E.3d 108 (Ind. Ct. App. 2015).....................................................8, 13

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .............................................................8, 13

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) .................................................................5

*Kolb v. Naylor*,
    658 F. Supp. 520 (N.D. Iowa 1987)........................................................25

*Laro, Inc. v. Chase Manhattan Bank (Nat'l Ass'n)*,
    866 F. Supp. 132 (S.D.N.Y. 1994) ..........................................................28

*Larson v. Overland Thrift & Loan*,
    818 P.2d 1316 (Utah Ct. App. 1991) .......................................................16

*Logan v. Morgan, Lewis & Bockius LLP*,
    350 So. 3d 404 (Fla. App. 2022)..............................................................16

*Mark IV Enters., Inc. v. Bank of Am., N.A.*,
    No. M2017-00965-COA-R3-CV, 2018 WL 3146305
    (Tenn. Ct. App. June 26, 2018)................................................................19

*Martinez v. Best Buy Co.*,
    283 P.3d 521 (Utah Ct. App. 2012) .........................................................35

*McBryde v. Freedom Mortg.*,
    No. A-22-CV-01038-RP, 2023 WL 2959869 (W.D. Tex. Apr. 14, 2023) ..............21

4915-5085-7077, v. 1

*McKee Foods Corp. v. Pitney Bowes, Inc.*,
    No. 1:06-CV-80, 2007 WL 896153 (E.D. Tenn. Mar. 22, 2007) ...........................................15

*McMahan Jets, LLC v. Roadlink Transp., Inc.*,
    68 F. Supp. 3d 817 (W.D. Tenn. 2014)..................................................................................14

*MDVIP, Inc. v. Beber*,
    222 So. 3d 555 (Fla. Dist. Ct. App. 2017) ............................................................................10

*Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*,
    45 S.W.3d 588 (Tenn. Ct. App. 2001)...................................................................................22

*MH Pillars Ltd. v. Realini*,
    277 F. Supp. 3d 1077 (N.D. Cal. 2017) ................................................................................20

*Moecker v. Bank of Am., N.A.*,
    No. 8:13-CV-01095-SCB-EAJ, 2013 WL 12159056 (M.D. Fla. Oct. 21, 2013) ...................17

*Moldenhauer v. FDIC*,
    No. 2:09-CV-00756 TS, 2010 WL 1064422 (D. Utah Mar. 18, 2010) ...................................21

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*,
    898 F.3d 461 (5th Cir. 2018) ...........................................................................................8, 13

*Nakkhumpun v. Taylor*,
    782 F.3d 1142 (10th Cir. 2015) ............................................................................................33

*Nevares v. M.L.S.*,
    345 P.3d 719 (Utah 2015)......................................................................................................35

*Nielsen v. The Patriot Grp., LLC*,
    No. 1:15-CV-00137, 2016 WL 407073 (D. Utah Feb. 2, 2016)............................................29

*Orient Mineral Co. v. Bank of China*,
    506 F.3d 980 (10th Cir. 2007) (Utah law) .........................................................................7, 13

*Par v. Wolfe Clinic, P.C.*,
    No. 421CV00290RGESBJ, 2022 WL 2187858 (S.D. Iowa May 10, 2022) ....................14, 15

*Platinum Estates, Inc. v. TD Bank, N.A.*,
    No. 11-60670-CIV, 2012 WL 760791 (S.D. Fla. Mar. 8, 2012) ............................................19

*PNC Bank, Nat'l Ass'n v. LucMaur, LLC*,
    No. 6:14-cv-248-Orl-37KRS, 2014 WL 5780386 (M.D. Fla. Oct. 14, 2014) ........................12

*Pope v. Wells Fargo Bank, N.A.*,
    No. 2:23-cv-86-JNP-DBP, 2023 WL 9604555 (D. Utah Dec. 27, 2023)...............................16

4915-5085-7077, v. 1

*Power & Tel. Supply Co. v. SunTrust Banks, Inc.*,
    447 F.3d 923 (6th Cir. 2006) ...................................................................8, 13

*Precision Vascular Sys., Inc. v. Sarcos, L.C.*,
    199 F. Supp. 2d 1181 (D. Utah 2002)................................................................34

*Produce All., LLC v. W. Cent. Produce, Inc.*,
    No. CV202921PSGAGRX, 2021 WL 3557672 (C.D. Cal. Apr. 27, 2021) .....................14, 15

*Pugh's IGA, Inc. v. Super Food Servs., Inc.*,
    531 N.E.2d 1194 (Ind. Ct. App. 1988).................................................................13

*Puttuck v. Gendron*,
    199 P.3d 971 (Utah Ct. App. 2008) ...................................................................20

*Ritchie Special Credit Invs., Ltd. v. JPMorgan Chase & Co.*,
    48 F.4th 896 (8th Cir. 2022) ...........................................................................19

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ..........................................................................5

*Roberson v. Bank of N.Y. Mellon*,
    No. 3:17-CV-00190, 2018 WL 3091209 (S.D. Tex. May 23, 2018)......................................22

*Roberts v. C.R. England, Inc.*,
    318 F.R.D. 457 (D. Utah 2017) ..........................................................................6

*Rupert v. Herlitz*,
    2011 Fla. Cir. LEXIS 11225 (Fla. 5th Cir Ct. June 17, 2011)....................................14, 15

*Rycar Tr. v. Yates Fam. Invs.*,
    No. 2:23-CV-00732-TC-DAO, 2025 WL 2591489 (D. Utah Sept. 8, 2025) ..........................33

*Shea v. Lorenz*,
    869 N.W.2d 196 (Iowa Ct. App. 2015).................................................................16

*Sheen v. Wells Fargo Bank, N.A.*,
    12 Cal. 5th 905 (Cal. 2022)............................................................................24

*Silver Crown Invs., LLC v. Team Real Est. Mgmt., LLC*,
    349 F. Supp. 3d 1316 (S.D. Fla. 2018) ................................................................26

*Simon v. Celebration Co.*,
    883 So. 2d 826 (Fla. Dist. Ct. App. 2004) ............................................................16

*Spence v. Basic Rsch.*,
    No. 2:16-CV-925-CW, 2018 WL 1997310 (D. Utah Apr. 27, 2018)....................................30

x

*St. Gregory Retreat Ctrs., LLC v. Wellmark Inc.*,
   No. 4:16-cv-00259-RGE-HCA, 2017 WL 11681690 (S.D. Iowa Feb. 6, 2017) ....................10

*Sutton v. Penny Mac Loan Servs., LLC*,
   No. 2:23-CV-00064, 2025 WL 1868078 (M.D. Tenn. July 7, 2025) ................................13, 25

*Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*,
   244 So. 3d 383 (Fla. Dist. Ct. App. 2018) ...............................................................................24

*Taylor v. Rothstein Kass & Co., PLLC*,
   No. 3:19-CV-1594-D, No. 3:19-cv-1594-D, 2020 WL 554583
   (N.D. Tex. Feb. 4, 2020) ........................................................................................................16

*TDC Lending LLC v. Priv. Cap. Grp., Inc.*,
   340 F. Supp. 3d 1218 (D. Utah 2018) ..............................................................................31, 32

*Total Quality Sys., Inc. v. Universal Synaptics Corp.*,
   679 F. Supp. 3d 1196 (D. Utah 2023) ......................................................................................7

*U.S. Bond & Fin. Corp. v. Nat'l Bldg. & Loan Ass'n of Am.*,
   17 P.2d 238 (Utah 1932)........................................................................................................35

*United States Bank, N.A. v. Miller*,
   2013 WL 12183652 (C.D. Cal. May 8, 2013) ........................................................................11

*United States v. Bestfoods*,
   524 U.S. 51 (1998)...................................................................................................................9

*United States v. Knight*,
   659 F.3d 1285 (10th Cir. 2011) .............................................................................................26

*U.S. ex rel. Brooks v. Stevens-Henager College*,
   305 F. Supp. 3d 1279 (D. Utah 2018) ......................................................................................9

*Vulcan Cap. Corp. v. Miller Energy Res., Inc.*,
   No. 3:14-CV-3283-B, 2015 WL 293839 (N.D. Tex. Jan. 22, 2015) .................................14, 15

*Waddoups v. Amalgamated Sugar Co.*,
   54 P.3d 1054 (Utah 2002) ........................................................................................................6

*Wardley Corp. v. Meredith Corp.*,
   93 F. App'x 183 (10th Cir. 2004) ......................................................................................14, 15

*Wiand v. Wells Fargo Bank, N.A.*,
   938 F. Supp. 2d 1238 (M.D. Fla. 2013)..............................................................................17, 18

*Wilson v. EverBank, N.A.*,
   77 F. Supp. 3d 1202 (S.D. Fla. 2015) ....................................................................................25

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*,
    450 F.3d 1132 (10th Cir. 2006) ........................................................20

*Wurtzebach v. Flooring Depot FTL, Inc.*,
    384 So. 3d 251 (Fla. Dist. Ct. App. 2024) ...................................8, 13

**Statutes**

15 U.S.C. § 78u–4 ............................................................................31, 32

18 U.S.C. § 1341 ....................................................................................29

18 U.S.C. § 1962 ..............................................................................26, 29

18 U.S.C. § 1964(c) ...............................................................................27

Utah Code § 13-11-3 ..............................................................................34

Utah Code § 13-11-4 ..............................................................................34

**Other Authorities**

Complaint, *352 Cap. GP LLC v. Wear*,
    No. 1:24-cv-05102 (S.D.N.Y. July 3, 2024), Dkt. 1 .............................1

Restatement § 145 (1971) ........................................................................6

Restatement § 148 (1971) ........................................................................6

## INTRODUCTION

Plaintiffs seek to recover from Defendants Celtic Bank Corporation and its parent Celtic Investment, Inc. (together, "Celtic") for decisions that Plaintiffs made to invest in what turned out to be a Ponzi-like scheme perpetrated by a non-party individual and his various companies. Celtic had no involvement whatsoever in the scheme and its only role was to provide SBA loans to the Plaintiffs who in turn used those funds to invest in their own franchise opportunities associated with the scheme. Yet, Plaintiffs seek to use this arms-length banking transaction to hold Celtic liable for their losses. Not only is that effort factually implausible, but it is also legally insufficient.

Just one example highlights the tenuous nature of their claims. Plaintiff, Tyler Sadek, served as the *chief financial officer* of the Ponzi entity. He had insight and knowledge far superior to the non-existent information Celtic had about the scheme. Yet, Mr. Sadek seeks to now hold Celtic liable for the actions of his company even though he was responsible for overseeing the Ponzi company's financials.[1] Stated differently, Mr. Sadek claims a third-party lender somehow had actual knowledge about a scheme where Mr. Sadek oversaw the financials of the Ponzi entity.

Plaintiffs' remaining claims fare no better. They seek to hold Celtic liable for their own voluntary investment decisions and the alleged misconduct of third parties. Yet, Celtic—one of several banks that issued standard SBA loans to the scheme's investors—had no role in the alleged scheme, and only engaged in routine, arms-length lending of SBA 7(a) loans to Plaintiffs. Under these circumstances, the law does not permit Plaintiffs to state claims against banks like Celtic, and Plaintiffs' Complaint ("Compl.") fails in this regard.

Plaintiffs' claims—which are governed by each of their home states' laws—all fail as a

---

[1] Complaint, *352 Cap. GP LLC v. Wear*, No. 1:24-cv-05102 (S.D.N.Y. July 3, 2024), Dkt. 1, ¶¶ 18, 89, 93, 141, 178, 180 (complaint against defendant Sadek detailing his role in the scheme, including authorizing fabricated documents and acting with knowledge of fraud).

1

matter of law. Plaintiffs' common law claims—including fraud, aiding and abetting fraud, conspiracy, negligence, and breach of fiduciary duty—fail to meet the plausibility and the particularity standards demanded by Rules 8 and 9(b). Plaintiffs fail to allege sufficient facts that Celtic had knowledge of, or participated in, the underlying scheme—nor do they allege any actionable misrepresentation, omission, or breach of duty by Celtic. Plaintiffs' statutory claims also fail as a matter of law. Under RICO, Plaintiffs fail to allege an enterprise, pattern of racketeering activity, or actionable predicate acts. Plaintiffs' securities claims lack particularized allegations of scienter, material misrepresentation, and reliance. Plaintiffs' Utah Consumer Sales Practices Act claim does not apply to commercial lending transactions and Plaintiffs fail to allege any deceptive act. Plaintiffs' Utah-based statutory claims also cannot be applied extraterritorially. Because of these pleading failures, the motion should be granted.

## FACTUAL BACKGROUND

### I.    Plaintiffs Allege WaterStation[2] Perpetrated a Ponzi Scheme.

Ryan Wear ("Wear") founded WaterStation, which developed, operated, and purportedly offered franchise investments in water vending machines, to investors with promised returns of 12-20% and a "guaranteed" buyback of the machines for any dissatisfaction. Compl. ¶¶ 22–25, 29–33. Investors allegedly financed a portion of the purchase of their investments with Small Business Administration ("SBA") loans under the SBA's 7(a) business loan program. *Id.* at 2, ¶¶ 35, 66 (loan amounts less than total investments). WaterStation allegedly used the investments to instead operate a Ponzi scheme ("Scheme"). *Id.* at 2, ¶ 22. Investors purchased ~15,000 units, but "just over 6,000 [units] actually existed" with the rest either "nonexistent or duplicative." *Id.*

---

[2] "WaterStation" collectively refers to at least three entities: (i) Creative Technology, LLC d/b/a Water Station Technology, (ii) Water Station Management, LLC, and (iii) WST Franchise Systems LLC. Compl. ¶¶ 22-25.

2

¶¶ 41, 105. By late summer 2024, WaterStation entered bankruptcy proceedings and "news rippled across the internet about the [Scheme's] collapse." *Id*. at 2, ¶¶ 37, 42. On August 14, 2025, federal authorities charged Wear with securities and wire fraud in connection with the Scheme. *Id.* ¶ 44.

## II.    Plaintiffs Allege Celtic Conspired and Assisted WaterStation with the Scheme Based on Routine Lender/Borrower Activities.

The SBA may designate a bank as a preferred lender under the SBA's Preferred Lender Program ("PLP"), which allows the SBA to delegate its authority to PLP-designated banks to review, approve, and issue SBA-guaranteed loans to qualified applicants. Compl. ¶¶ 19, 34. Celtic and various other PLP banks allegedly issued SBA loans to investors, who then used the loan proceeds for their investments.[3] *Id.* ¶ 35. Plaintiffs base Celtic's alleged participation in the Scheme on generic allegations related to a single employee in Celtic's SBA Lending Department—Scott Foster—and Celtic's general responsibilities as a lender. *Id*. ¶¶ 46–84. Foster allegedly invested in WaterStation and knew about its financial issues, but did not "convey[] [his] concerns or experiences" with Plaintiffs and "continued to encourage them to borrow [] more money" for the Scheme. *Id.* ¶¶ 21, 54–55, 58. Referencing unspecified, personal text messages (without dates, content, or information about Celtic's knowledge), Foster questioned Wear about missed payments "as early as 2021 and no later than March 2022"—after all but one loan belonging to Plaintiff Driftless Water Ventures LLC were already approved. *Compare id.* ¶ 57, *with id.* ¶ 66. Similarly, Plaintiffs allege, but provide no detail regarding, Foster's purported representations about the "great investment" opportunity, including his encouragement of, or reassurances about, the purported investments. *Id.* ¶ 74.

---

[3] Plaintiffs allege non-PLP banks and "SBA PLP-participating banks capitalized on this feature of the SBA 7(a) program to lend money," and they identify non-parties Unibank and First Fed Bank but only name Celtic as a defendant. Compl. ¶¶ 26, 35, 36 n.1, 45, 95–96.

3

Plaintiffs likewise generically allege Celtic made statements. Compl. ¶¶ 69–84. Plaintiffs refer to Celtic's online marketing materials and allege broad statements about Celtic's experience with SBA loans, including its status as a "top SBA lender," the volume of its originated SBA loans (both related and unrelated to WaterStation investments), and its praise of Foster's "SBA expertise." *Id*. ¶¶ 69–72. Celtic allegedly "endorsed and approved WaterStation as a legitimate and sound investment" and Plaintiffs generally relied on Celtic's "expertise, knowledge, and advice." *Id*. ¶¶ 76, 78. Yet, Plaintiffs concurrently admit that they based their investment decisions on information obtained from various sources, not solely from Celtic. *Id*. ¶ 47.

Celtic's PLP status and unspecified "relationship with Plaintiffs" allegedly exceeded the scope of a conventional lender-borrower relationship. *Id*. ¶¶ 69–79. Plaintiffs allege conclusory misrepresentations about the SBA loans: (i) SBA-loan qualifications, eligibility, and compliance, (ii) use of the loan proceeds, and (iii) SBA-loan obligations. *Id*. ¶¶ 73, 81, 83–84. They list alleged SBA loan omissions without any factual detail. *Id*. ¶ 82. They cite to limited, standard SBA loan documents (*e.g.*, loan authorizations, settlement sheets, and commitment letters) related to only four of the ten Plaintiff companies, including two of their individual owners, and none for the remaining six plaintiff corporate entities or their five individual owners. *Id*. ¶ 100.

## III. Plaintiffs Allege They Invested in the Scheme.

Plaintiffs consist of nine individuals and their respective limited liability companies, located in Texas, Iowa, Utah, California, Indiana, Florida, and Tennessee. Compl. ¶¶ 1–18. Between June 19, 2020 and October 20, 2022, WaterStation introduced each Plaintiff to Celtic to obtain SBA financing (over $17 million in total with loans ranging from $382,500 to $2,946,800 per loan) for their investments. *Id*. ¶¶ 47–48, 52, 63, 66. As required by the SBA, each individual Plaintiff personally guaranteed the loans. *Id*. at 3, ¶ 67. On August 27, 2025, Plaintiffs filed a

4

Complaint asserting nine counts against Celtic for various common law and statutory violations—each subject to dismissal for the reasons stated herein.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted where a complaint fails to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). This requires "more than labels and conclusions" with sufficient allegations to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 prohibits collective allegations or group pleading to obscure "who is alleged to have done what to whom." *Robbins*, 519 F.3d at 1250. Allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

Rule 9(b) requires a complaint sounding in fraud to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Heavy Petroleum Partners, LLC v. Atkins*, 457 F. App'x 735, 742–43 (10th Cir. 2012) (citation omitted). Allegations "on information and belief" do not satisfy Rule 9(b) absent specific facts. *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016).

## ARGUMENT

### I.    Different State Laws Apply to Plaintiffs' Claims Under Choice of Law Principles, Requiring Dismissal Under Those States' Laws.

Before proceeding to the substantive deficiencies in the complaint, it is necessary to conduct a choice of law analysis. When exercising diversity or supplemental jurisdiction, a federal court applies the substantive law and choice of law rules of the forum state. *BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999). Utah uses the "most significant

5

relationship" test under the Restatement to determine the applicable state law. *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002). For tort claims, Restatement § 145 (1971) requires consideration of: (1) the location of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the center of the parties' relationship. *Roberts v. C.R. England, Inc.*, 318 F.R.D. 457, 493 (D. Utah 2017). For fraud claims, Restatement § 148 (1971) requires a similar evaluation of: (1) where the plaintiff acted in reliance; (2)-(3) where the representations were received and made; (4) the parties' domicile/residence; (5) the location of the subject matter of the transaction; and (6) where the plaintiff intended to perform. *Roberts*, 318 F.R.D. at 493–94. Given the substantial overlap between the §§ 145 and 148 factors and because the analysis under either section leads to the same result—*e.g.*, different state's laws apply—Celtic analyzes them in tandem below. *Id.* (analyzing §§ 145 and 148 together).

The individual Plaintiffs and their respective business entities reside in seven different states: (1) <u>Texas</u> (Mandyam/Kmandy Investments, LLC and Franklin/AR Water Supply, LLC); (2) <u>Iowa</u> (Scherrman/Driftless Water Ventures, LLC); (3) <u>Utah</u> (Done/Adventure Done Right, LLC); (4) <u>California</u> (Grillo/Rosewater Ventures, LLC); (5) <u>Indiana</u> (Sadek/Mosaic Partners, LLC and Schroeder/Indiana Water Technology, LLC); (6) <u>Florida</u> (Anderson/Spruce Waters Investments, LLC); and (7) <u>Tennessee</u> (Thakkar/Rose Trail Ventures, LLC/Rose Trail Ventures 2, LLC). Compl. ¶¶ 1–18. Plaintiffs received the alleged misrepresentations and acted in reliance on them in their home states (*e.g.*, receipt, review, and signature of commitment letters, loan authorizations, and other documents). *Id.* ¶¶ 98, 100. The location of where each plaintiff invested in the Scheme and suffered their alleged harm occurred in their home states. As required by the SBA, Plaintiffs personally guaranteed the SBA loans with assets (*e.g.*, all inventory, chattel paper,

6

accounts, equipment, and general intangibles) associated with their companies as primary collateral—companies domiciled, and assets located in, Plaintiffs' home states. *Id.* at 3, ¶ 67; Declaration of J. Shaw in support of Motion to Dismiss ("Shaw Decl.")[4] ¶¶ 5, 10, 15, 20, 24, 29, 33, 37, 41, 44 (Plaintiffs' various commercial security agreements). Plaintiffs also personally guaranteed the SBA loans with personal real estate holdings located in their home states as secondary collateral (*e.g.*, primary or secondary residences). Compl. ¶ 68; Shaw Decl. ¶¶ 7, 12, 18, 22, 31, 42 (Plaintiffs' various commitment letters).

Although Celtic Bank is headquartered in Utah, it conducts business and issues SBA loans nationwide. Its residence does not favor the application of Utah law over other states' laws. WaterStation likewise placed water vending machines at "retail locations nationwide"—indeed only one Plaintiff (Rose Trail Ventures 2) of nineteen Plaintiffs had an interest in any machines in Utah. Compl. ¶ 32; Shaw Decl. ¶¶ 6, 11, 17, 21, 25, 30, 34, 38, 46. Thus, Plaintiffs' home states have the most significant relationship to the claims, and the Court must analyze each common law claim under the laws of Utah, Texas, Iowa, Indiana, Florida, Tennessee, and California.

## II.    Plaintiffs' Common Law Claims Fail Under the Applicable States' Laws.

### A.    Plaintiffs' Fraud Claim Fails to Sufficiently Plead with Particularity the Required Elements Which is Fatal to Their Claim (Count I).

A fraud claim requires: (1) a false statement of material fact; (2) knowledge of the statement's falsity or reckless disregard for its truth; (3) with intent or purpose to defraud or induce reliance; (4) reasonable or justifiable reliance; and (5) resulting damages. *Orient Mineral Co. v.*

---

[4] It is proper to consider "documents referred to in the complaint," such as Plaintiffs' loan documents, "if they 'are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 679 F. Supp. 3d 1196, 1208 (D. Utah 2023) (citation omitted). "[I]f there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls." *Id.* (citation omitted).

*Bank of China*, 506 F.3d 980, 1005 (10th Cir. 2007) (Utah law); *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 473–74 (5th Cir. 2018) (Texas law); *Dier v. Peters*, 815 N.W.2d 1, 7 (Iowa 2012); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (California law); *Kapoor v. Dybwad*, 49 N.E.3d 108, 121 (Ind. Ct. App. 2015); *Wurtzebach v. Flooring Depot FTL, Inc*., 384 So. 3d 251, 255 (Fla. Dist. Ct. App. 2024); *Power & Tel. Supply Co. v. SunTrust Banks, Inc*., 447 F.3d 923, 931 (6th Cir. 2006) (Tennessee law). Plaintiffs' fraud claim must be dismissed for all the reasons below.

   **Complaint fails to comply with Rule 9(b)'s particularity requirements**. Allegations that merely recite the elements of fraud or conclusory assertions, without specifying the time, place, or content of the alleged misrepresentations, fail to satisfy Rule 9(b). *Heavy Petroleum Partners*, 457 F. App'x at 743 (dismissing fraud counterclaims under Rules 8 and 9(b)). That is the case here. For example, Plaintiffs contend Celtic acted beyond the role of an ordinary lender based on its "inherent self-interest in each Plaintiff's franchise relationship with WaterStation" and Foster's alleged relationship with WaterStation. Compl. ¶ 75. Plaintiffs then allege a conclusory list of Celtic's alleged omissions about Foster's involvement, such as: (1) Celtic's knowledge of Foster's specific activities, communications, or promises with WaterStation and/or Wear; (2) the terms of the "service arrangement" between Foster and WaterStation/Wear; (3) SBA loans to investors led to payments to Foster; (4) WaterStation's "precarious financial condition"; (5) Foster's competing investment claims with Plaintiffs; (6) WaterStation's inability to repay investors; (7) verification of the existence or locations of the water vending machines, and (8) the existence of "fraud alerts" or "compliance concerns." *Id.* ¶ 82(a)–(i).

   Yet, Plaintiffs fail to allege facts (*e.g.*, who, what, when, where, and how) to plausibly support these perfunctory and conclusory allegations. *Heavy Petroleum Partners*, 457 F. App'x at

8

742–43 (fraud claims "must set forth the time, place and contents of the false representation") (quotations omitted). Plaintiffs' reliance on certain key allegations about Foster and his purported personal investments and returns, alleged solely upon information and belief and without factual basis, is insufficient. Compl. ¶¶ 55, 59 (allegations of Foster investments and receipt of payments on information and belief). The Complaint also fails to allege with particularity when Foster allegedly invested in WaterStation or when he was repaid, calling further into question the plausibility of Plaintiffs' allegations related to Foster because his alleged actions post-date nearly all the alleged loans. *Id.* ¶¶ 57, 66. The Complaint relies on impermissible conclusory allegations without any specific facts which is barred under Rule 9(b)'s specificity requirements.

**The Complaint fails to comply with Rule 8's fair notice requirements**. Plaintiffs also cannot lump multiple parties together in a conclusory fashion and make generic allegations without differentiating and identifying whether the allegations apply to plaintiff or defendant. *U.S. ex rel. Brooks v. Stevens-Henager College*, 305 F. Supp. 3d 1279, 1308 (D. Utah 2018) (dismissing complaint under Rule 8(a)(2) for failure to distinguish between individual defendants and separate claims for relief based on the distinct sets of false statements). For example, Plaintiffs allege, in the aggregate, that Celtic "encouraged each Plaintiff to invest in WaterStation," but fail to identify the specific time, place, or wording of any such encouragement as to any specific plaintiff. Compl. ¶ 75. Plaintiffs impermissibly rely on collective allegations or group pleading.[5]

---

[5] Defendant Celtic Investment must be dismissed because it is improperly named as a party. Plaintiffs' allegations arise from their relationship to Celtic Bank, not Celtic Investment, and courts have repeatedly found it improper to lump a parent and subsidiary together. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (". . . a parent corporation . . . is not liable for the acts of its subsidiaries."); *see also Cyprus Amax Minerals Co. v. TCI Pac. Commc'ns, LLC*, 28 F.4th 996, 1007 (10th Cir. 2022) ("[C]orporate veils exist for a reason and should be pierced only reluctantly and cautiously"). Additionally, Plaintiffs only include limited, conclusory allegations or recitations of the claims' elements against Celtic Investment in violation of Rules 8 and 9(b). Compl. ¶¶ 20, 118, 119, 120, 145, 157–160, 162–63, 171, 177, 183, 187, 190–92.

9

**Alleged statements of puffery/future conduct, and omissions are not actionable.** Utah, Florida, Texas, Indiana, and California prohibit fraud claims based upon sales puffery statements. *See, e.g., Berkeley Bank for Cooperatives v. Meibos*, 607 P.2d 798, 805 (Utah 1980) ("[S]tatements of opinions as to the legal effect of contracts" are not actionable fraud); *MDVIP, Inc. v. Beber*, 222 So. 3d 555, 561 (Fla. Dist. Ct. App. 2017) (promises to deliver "exceptional" product or service constitute opinions and non-actionable puffery); *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 889 (Tex. App. 2008) (claims that a "low risk" investment will "produce large revenues for a long time" amount to puffery); *Dryden v. Sun Life Assurance Co.*, 737 F. Supp. 1058, 1069 (S.D. Ind. 1989) (seller's "puff" or "trade talk" does not support a fraud claim); *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003) (affirming dismissal of fraud claims based on "generalized, vague and unspecific assertions" of puffery). Plaintiffs cannot rely upon generic sales puffery statements to allege a false statement of material fact.[6] Compl. ¶¶ 69–72 (alleging broad statements in online marketing materials about Celtic's experience with SBA loans, status as a "top SBA lender," volume of originated SBA loans (both related and unrelated to WaterStation investments), and praise of Foster's "SBA expertise"), 74 (noting Foster "told Plaintiffs the WaterStation franchise was a 'great investment'" and that he "boasted he was great at the SBA program").

Plaintiffs also cannot rely on representations regarding future conduct, broken promises, or unfulfilled predictions for a fraud claim without plausibly alleging Celtic made the statement with an existing intent not to perform. *See, e.g., St. Gregory Retreat Ctrs., LLC v. Wellmark Inc.*, No. 4:16-cv-00259-RGE-HCA, 2017 WL 11681690, at *15 (S.D. Iowa Feb. 6, 2017) (failure of

---

[6] Plaintiff Sadek, who had direct insight into the Ponzi scheme as the person responsible for overseeing the Ponzi entity's financials, could not have justifiably relied on Celtic's generic statements. *See, e.g.*, *Dryden*, 737 F. Supp. at 1069 (Indiana policyholder's fraud claim dismissed because holder had sufficient information so that he "could not have been misled by [] 'puffing'").

future performance cannot prove deceit); *United States Bank, N.A. v. Miller*, 2013 WL 12183652, at *7 (C.D. Cal. May 8, 2013) (promises of future conduct is not actionable fraud). Here, Plaintiffs allege that Celtic misrepresented that it "would": (1) use loan proceeds to purchase WaterStation machines; (2) conduct a third-party site visit; and (3) file UCC financing statements. Compl. ¶¶ 105(n), (q), (t). These statements of future conduct are not actionable.

Likewise, in their Complaint, Plaintiffs identify eight specific communications from Celtic to only a subset of the Plaintiffs, and fail to sufficiently allege how they constitute materially false statements. Courts repeatedly dismiss fraud claims at the pleading phase for failing to allege a materially false statement. *See, e.g.*, *Fid. Nat'l Title Ins. Co. v. Worthington*, 344 P.3d 156, 160 (Utah Ct. App. 2015) (fraud claim failed in underwriting dispute where plaintiffs "did not identify any false representation"); *Dixon v. Countrywide Home Loans, Inc.*, 710 F. Supp. 2d 1325, 1332 (S.D. Fla. 2010) (dismissing claims arising from statements in loan applications, where the loan applicant certified the same statements at issue).

Here, Plaintiffs fail to allege sufficient facts to support that Celtic made false statements. Compl. ¶¶ 100(a), (g) [Shaw Decl. ¶¶ 16, 45] (language from an SBA-generated document—SBA Form 1050—signed by Plaintiffs Anderson/Spruce Waters Investment, LLC), 100(b) [Shaw Decl ¶ 8] (language from an SBA-generated document—Acknowledgment and Assignment Agreement—signed by Plaintiffs Done/Adventure Done Right), 100(c) [Shaw Decl. ¶ 7] (a "commitment letter" about a *future* third-party site visit), 100(d) [Shaw Decl. ¶ 26] (emails between an unidentified Celtic employee and Plaintiff Mandyam about loan down payment amounts[7]), 100(e) [Shaw Decl. ¶ 27] (a "commitment letter" for Plaintiffs Mandyam/Kmandy

---

[7] For example, Plaintiffs contend that this email showed Celtic's intent to "induce and encourage additional machine purchases and investments." Compl. ¶ 100(d). But the full exchange shows that in fact *Plaintiff* asked *Water Station* whether it would be "okay with [a] lower down payment."

Investments, LLC about the "active nature of the franchise and that an acknowledgment and assignment agreement must be signed"), and 100(f) [Shaw Decl. ¶ 13] (language from a loan authorization to Plaintiff Driftless Water Ventures LLC). Further, Plaintiffs cannot rest a fraud claim on a statement *they themselves also made*—the SBA Form 1050 certifications require *both* Celtic and Plaintiffs to certify the same statements. Shaw Decl. ¶¶ 16, 45 ("[T]he Lender *and the Borrower* certify that . . . The loan proceeds were disbursed and received and will be used in accordance with the Use of Proceeds section of the Authorization . . ." (emphasis added)). Notably, eleven Plaintiffs—Franklin/AR Water Supply LLC, Grillo/Rosewater Ventures, Sadek/Mosaic Partners, Schroeder/Indiana Water Technology, and Thakkar/Rose Trail Ventures 1 and 2—fail to allege any specific statements made to them. Compl. ¶ 100. The few statements these Plaintiffs do allege, as a group, amount to non-actionable puffery or opinions of future facts.

Plaintiffs also cannot maintain a fraud claim based upon alleged omissions. Under each state's laws, an arms-length lender ordinarily owes no fiduciary or disclosure duty to a borrower, so these claims are not actionable. *See, e.g.*, *Arnson v. My Investing Place L.L.C.*, No. 2:12-cv-865, 2013 WL 5724048, at *5 (D. Utah Oct. 21, 2013) ("Utah courts will not find a duty to speak" where lenders and borrowers "deal at arm's length"); *PNC Bank, Nat'l Ass'n v. LucMaur, LLC*, No. 6:14-cv-248-Orl-37KRS, 2014 WL 5780386, at *7 (M.D. Fla. Oct. 14, 2014) (no special circumstances to "transform the ordinary lender/borrower relationship" for defendant to assume a duty to disclose material facts); *Bell v. Wells Fargo Bank, N.A.*, No. 4:14-CV-388-Y, 2017 WL 6761770, at *7 (N.D. Tex. Oct. 13, 2017) (no fiduciary relationship between a lender and borrower); *De Wit v. FIRSTAR Corp.*, 879 F. Supp. 947, 988 (N.D. Iowa 1995) (no general duty

---

The Celtic employees on the email chain confirmed that in their experience, a 10% down payment was allowed and common. *Id.* Plaintiff then confirmed that WaterStation had agreed to 10%. *Id.*

to disclose to a borrower); *Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 639 (Ind. Ct. App. 2015) (a traditional debtor-creditor relationship does not create a fiduciary duty or duty to disclose); *Sutton v. Penny Mac Loan Servs., LLC*, No. 2:23-CV-00064, 2025 WL 1868078, at *7– 8 (M.D. Tenn. July 7, 2025) (no fiduciary duty or duty to disclose for a bank); *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 607 (Cal. Ct. App. 2014) (no duty to disclose in part because it involved an arm's length loan transaction). Plaintiffs' conclusory allegations fail to support an inference that Celtic owed a duty to Plaintiffs for ordinary lender activities. *See generally* Compl.

**No knowing or reckless misrepresentation**. Plaintiffs also fail to plausibly allege that Celtic made any misrepresentation knowingly or with reckless disregard of its truth. Plaintiffs fail to allege specific facts to support the inference of knowledge. *Arnett v. Arnett*, No. 2:13-cv-01121-DN, 2014 WL 2573291, at *3 (D. Utah June 9, 2014). Iowa, Florida, and California require a knowing misrepresentation. *Dier*, 815 N.W.2d at 7 (Iowa); *Wurtzebach*, 384 So. 3d at 255 (Florida); *Kearns*, 567 F.3d at 1126 (California). Utah, Texas, Indiana, and Tennessee permit a knowing or reckless misrepresentation. *Orient Mineral Co.*, 506 F.3d at 1005 (Utah); *N. Cypress Med. Ctr. Operating Co.*, 898 F.3d at 473–74 (Texas); *Kapoor*, 49 N.E.3d at 121 (Indiana); *Power & Tel. Supply Co.*, 447 F.3d at 931 (Tennessee). Plaintiffs only contend that Celtic had knowledge due to Foster's dealings with WaterStation (Compl. ¶ 75), but they do not allege with particularity what information Foster obtained, when, how, and with whom, nor any facts explaining how Celtic knew of Foster's personal text messages with WaterStation. *Id*. ¶ 57.

**No justifiable reliance based on integration clause and source**. Plaintiffs cannot plausibly allege that they justifiably relied on any Celtic statements.[8] First, purported reliance on

---

[8] Sadek, for example, cannot allege justifiable reliance on Celtic because he had more relevant knowledge as a top officer of the Ponzi entity than Celtic did as an arms-length lender. *See, e.g.*, *Pugh's IGA, Inc. v. Super Food Servs., Inc.*, 531 N.E.2d 1194, 1198 (Ind. Ct. App. 1988) (plaintiffs

13

verbal statements is not justified in the face of express, unambiguous terms or an integration clause. *Wardley Corp. v. Meredith Corp.*, 93 F. App'x 183, 186–87 (10th Cir. 2004) (affirming dismissal of fraud claim because reliance on promises made contrary to the contract terms is unreasonable); *Vulcan Cap. Corp. v. Miller Energy Res., Inc.*, No. 3:14-CV-3283-B, 2015 WL 293839, at *6, *8 (N.D. Tex. Jan. 22, 2015) (no justifiable reliance based on representations directly and unambiguously contradicted by a written contract); *Eiler Aviation Consultants, Inc. v. PDX VFR, LLC*, No. 2:11-CV-332-WTL-DKL, 2012 WL 3065568, at *2 (S.D. Ind. July 27, 2012) (integration clauses preclude "reli[ance] on any statements made outside of the written contract" as a matter of law); *Rupert v. Herlitz*, 2011 Fla. Cir. LEXIS 11225, at *9 (Fla. 5th Cir Ct. June 17, 2011) (party cannot reasonably rely on alleged verbal promises contradicted by, or addressed in, a written agreement); *McMahan Jets, LLC v. Roadlink Transp., Inc.*, 68 F. Supp. 3d 817, 832 (W.D. Tenn. 2014) (contract disclaimer negates reasonable reliance); *Produce All., LLC v. W. Cent. Produce, Inc.*, No. CV202921PSGAGRX, 2021 WL 3557672, at *5 (C.D. Cal. Apr. 27, 2021) (dismissing fraud claim because plaintiff "could not have reasonably relied on oral representations that contradicted the written terms of the Agreements"); *Par v. Wolfe Clinic, P.C.*, No. 421CV00290RGESBJ, 2022 WL 2187858, at *14 (S.D. Iowa May 10, 2022), *aff'd*, 70 F.4th 441 (8th Cir. 2023) (plaintiffs cannot reasonably rely on representations that contradicted the written agreements).

Various documents signed by both Plaintiffs and Celtic contain integration clauses confirming the documents contain the parties' entire understanding and precluding reliance on any alleged oral representations by Foster. *See, e.g.*, Shaw Decl. ¶¶ 4, 9, 14, 19, 23, 28, 32, 36, 40, 43

---

had no right to rely on alleged misrepresentations in an arms-length relationship in part because they were "experienced business people" with access to relevant information).

4915-5085-7077, v. 1

(Business Loan Agreements at p. 5) ("This Agreement, together with any Related Documents, constitute the entire understanding and agreement as to the matters set forth in this Agreement"), ¶¶ 5, 10, 15, 20, 24, 29, 33, 37, 41, 44 (Commercial Security Agreements at p. 4) (same), ¶¶ 3, 7, 12, 18, 22, 27, 31, 35, 39, 42 (Commitment Letters at p. 7) (same; also stating borrower "may not rely upon any statements or representations made by any party in connection with the Loan" that contravene the terms unless in a subsequent writing); *see also Wardley Corp.*, 93 F. App'x at 187 (fraud claim precluded by application of integration clause in parties' contract); *Vulcan Cap. Corp.*, 2015 WL 293839, at *6 (integration clause valid under Texas law and fraud claim dismissed); *Eiler Aviation Consultants*, 2012 WL 3065568, at *2 (S.D. Ind. July 27, 2012) (integration clause enforced under Indiana law and fraud claim dismissed); *Par*, 2022 WL 2187858, at *14 (integration clause applied under Iowa law and fraud claim dismissed); *Rupert*, 2011 Fla. Cir. LEXIS 11225, at *9 (integration clauses enforced in Florida); *McKee Foods Corp. v. Pitney Bowes, Inc.*, No. 1:06-CV-80, 2007 WL 896153, at *4 (E.D. Tenn. Mar. 22, 2007) (same); *Produce All., LLC*, 2021 WL 3557672, at *5 (same).

Second, the facts Plaintiffs allege undermine their assertion of justifiable reliance. Plaintiffs concede they were introduced, learned about, or persuaded to invest "from a variety of sources" and further allege they decided to invest based on information from *WaterStation*—not Celtic. Compl. ¶¶ 33–34 (describing *WaterStation* representations), 47–48 (noting a "variety of sources" impacted their investment decisions). None of the allegations in the Complaint plausibly allege that Plaintiffs justifiably relied on any Celtic statements.

**No causation**. The alleged damages stem from the actions of WaterStation and Wear, not from any conduct by Celtic. Celtic, as an SBA-authorized lender without any fiduciary duty, issued standard SBA loans to Plaintiffs at their request. Plaintiffs' failed investments are attributable to

15

WaterStation's and Wear's conduct, not to any direct actions by Celtic. *See, e.g.*, *Larson v. Overland Thrift & Loan*, 818 P.2d 1316, 1323 (Utah Ct. App. 1991) (affirming dismissal of fraud claim for lack of a causal connection between the alleged fraud and harm); *Simon v. Celebration Co.*, 883 So. 2d 826, 833 (Fla. Dist. Ct. App. 2004) (dismissing fraud claim for lack of causation— "fraud cannot form the basis for recovery of damages unless the damages directly arise from the fraud and are causally connected to the fraud."). Plaintiffs have not alleged facts showing that any purported misrepresentation or omission by Celtic proximately caused their losses.

### B.    Plaintiffs' Allegations Relating to Ordinary Lending Activity Fail to Plausibly Allege Aiding and Abetting Fraud (Count II).[9]

Florida, Iowa, Tennessee, and California law governs the remaining Plaintiffs' aiding and abetting fraud claim and requires: (1) actual knowledge and (2) substantial assistance. *Logan v. Morgan, Lewis & Bockius LLP*, 350 So. 3d 404, 410 (Fla. App. 2022); *Shea v. Lorenz*, 869 N.W.2d 196 (Table) (Iowa Ct. App. 2015); *Fuller v. Cmty. Nat'l Bank*, No. E2018-02023-COA-R3-CV, 2020 WL 1485696, at *11 (Tenn. Ct. App. Mar. 27, 2020); *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1120 (S.D. Cal. 2024). Plaintiffs fail to allege sufficient, plausible facts to support the elements of actual knowledge and substantial assistance.

**Actual knowledge not sufficiently alleged nor could it be since Celtic engaged in routine banking activities.**[10] In all of these states, actual knowledge, even if Plaintiffs rely on

---

[9] The Utah, Texas, and Indiana Plaintiffs' aiding and abetting fraud claims must be dismissed because these states do not recognize the claim. *See, e.g.*, *Pope v. Wells Fargo Bank, N.A.*, No. 2:23-cv-86-JNP-DBP, 2023 WL 9604555, at *5 (D. Utah Dec. 27, 2023) (not recognized); *Taylor v. Rothstein Kass & Co., PLLC*, No. 3:19-CV-1594-D, No. 3:19-cv-1594-D, 2020 WL 554583, at *5 (N.D. Tex. Feb. 4, 2020) (does not exist); *Crown Holdings v. Berkley Risk Adm'rs Co., LLC*, No. 4:15-cv-00013-SEB-TAB, 2016 WL 559213, at *4 (S.D. Ind. Feb. 12, 2016) (not recognized).

[10] If the Court finds Utah, Texas, and Indiana recognizes an aiding and abetting fraud claim, the claim must be dismissed for failure to plead actual knowledge and substantial assistance.

circumstantial evidence, is a very high bar at the pleading stage. *See, e.g.*, *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013) (requiring actual knowledge of the fraudulent activities—the "aider-and-abettor *actually knew* of the underlying wrongs committed"). Allegations of constructive knowledge fail to meet this requirement. *See, e.g.*, *In re Brican Am. LLC*, No. 10-md-02183-PAS, 2015 WL 11661980, at *4 (S.D. Fla. Aug. 4, 2015) (dismissing aiding and abetting fraud claim because the allegations suggest, at most, constructive knowledge but defendant had no fiduciary or investigatory duty); *Moecker v. Bank of Am., N.A.*, No. 8:13-CV-01095-SCB-EAJ, 2013 WL 12159056, at *7 (M.D. Fla. Oct. 21, 2013) (constructive knowledge is not enough; allegation that a financial institution "should have known that something was amiss" not sufficient to survive a motion to dismiss). Here, Plaintiffs fall far short of that bar given that they do not make any allegations of actual knowledge and instead rely on circumstantial innuendo based on information and belief.

*In re Brican America* is a good example showing why Plaintiffs have failed to allege actual knowledge. 2015 WL 11661980. In that case, plaintiffs alleged that defendants, who referred them to the allegedly fraudulent business Brican, had knowledge of fraud because they could have figured out and realized that Brican operated an unviable business because its payment obligations were unsustainable and it had no legitimate reason to advertise its business outside of its locale. *Id.* at *4. Like Plaintiffs here, the plaintiffs complained that the defendants had "failed to investigate the geographical scope and viability of Viso's business, instead lending credibility to Brican's fraud." *Id.* at *3. The court found defendants had "neither a fiduciary relationship with [] nor any contractual obligation to disclose or investigate these issues." *Id.* at *4. The court concluded that, "[a]t most, these allegations suggest constructive knowledge, which does not satisfy the pleading requirement of actual knowledge." *Id.*

17

Plaintiffs solely allege "constructive knowledge" and "deliberate[] ignoran[ce]" of a fraud—upon information and belief only—which is insufficient. Compl. ¶ 113 (alleging constructive knowledge "upon information and belief" without any specific, supporting facts). Plaintiffs rely on vague contentions that Celtic should have investigated, and that its lending activities gave credibility to, the Scheme. *See, e.g.*, *id.* ¶ 100(a), (f), (g) (alleging Celtic legitimized ineligible SBA loans); *id.* ¶¶ 76, 92, 96 (alleging Celtic's processing of SBA loans endorsed WaterStation as a "legitimate and sound commercial investment"); *id.* ¶¶ 130(g), 139(f), (g) (alleging Celtic did not "verify" or "confirm" the existence or locations of collateralized vending machines and whether loan proceeds were actually used to purchase water vending machines). In Plaintiffs' entire 202-paragraph Complaint, Plaintiffs fail to affirmatively allege—even once—that Celtic had actual knowledge of the Scheme or any allegation to support such a conclusory statement.

Plaintiffs' allegations that Celtic "should have known" also fail under prevailing law. The discussion in *Wiand*, a factually similar case seeking to hold a bank liable for its alleged connection to a Ponzi scheme, is instructive. "Cases addressing the liability of banks for Ponzi schemes consistently hold that 'red flags' arising from suspicious activity giving rise to the presumption that the bank should have known about the Ponzi scheme are insufficient to allege aiding-and-abetting liability." *Wiand*, 938 F. Supp. 2d at 1246 (M.D. Fla. 2013). Thus, factual allegations of knowledge arising from account-opening documents, transactions, or banking activity patterns did not meet the knowledge requirement. *Id.* at 1244–45 (alleged awareness of "'red flags' or procedural infirmities that should have alerted the bank to potentially unscrupulous activity by its customer" are insufficient and fail to create a strong inference of "actual knowledge" of wrongdoing); *In re FTX Cryptocurrency Exch. Collapse Litig.*, 781 F. Supp. 3d 1324, 1351

(S.D. Fla. May 7, 2025) (noting that "red flags" or "aroused suspicions" do not constitute actual awareness and dismissing aiding and abetting claim).

Plaintiffs' Complaint includes numerous, equivocal allegations of knowledge with reference to unidentified factual details, which further prohibit any reasonable inferences be made in its favor. Compl. at 3, ¶¶ 82, 107–08 (alleging that Celtic "knew or should have known"); ¶¶ 130, 139 (alleging that Celtic ignored or failed to disclose "red flags" or "obvious signs of fraud"); *compare id.*, *with Ritchie Special Credit Invs., Ltd. v. JPMorgan Chase & Co.*, 48 F.4th 896, 900 (8th Cir. 2022) (alleged ignorance of "obvious warning signs of fraud" cannot satisfy actual knowledge). These allegations do not suffice for actual knowledge.

**Substantial assistance allegations also fall short.** Plaintiffs must allege with particularity under Rule 9(b) that the aider and abettor "gave substantial assistance or encouragement" to the Scheme. *See, e.g.*, *Platinum Estates, Inc. v. TD Bank, N.A.*, No. 11-60670-CIV, 2012 WL 760791, *4-5 (S.D. Fla. Mar. 8, 2012) (aiding and abetting fraud fails under substantial assistance prong); *Mark IV Enters., Inc. v. Bank of Am., N.A.*, No. M2017-00965-COA-R3-CV, 2018 WL 3146305, at *3 (Tenn. Ct. App. June 26, 2018) (vague allegations of substantial assistance or encouragement insufficient as a matter of law); *Est. of Butler v. Maharishi Univ. of Mgmt.*, No. 4:06-cv-00072-JEG, 2008 WL 11336336, at *5 (S.D. Iowa Sep. 24, 2008) (plaintiff failed to plead aiding and abetting claim with particularity); *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012, 1027 (N.D. Cal. 2009) (aiding and abetting claim dismissed for lack of specific facts of substantial assistance or encouragement). Tennessee also requires "affirmative conduct" to meet the substantial assistance element. *Mark IV Enters., Inc.*, 2018 WL 3146305, at *3.

But Plaintiffs plead no facts to show that Celtic had any involvement in WaterStation's misrepresentations, communicated WaterStation's misstatements to Plaintiffs, or agreed to help

conceal them. Plaintiffs' allegation that Foster "encouraged" larger loan amounts or advertised his SBA experience does not amount to substantial assistance of WaterStation's Scheme, as the alleged conduct concerns loan sizes and the underwriting process of SBA loans—not assisting in the primary, underlying fraud itself (*e.g.*, selling franchise investments in nonexistent or duplicative water vending machines). Compl. ¶¶ 74–76. Celtic had a limited, arms-length lender-borrower relationship with Plaintiffs—underwriting, approving, documenting, and funding SBA loans, for which the SBA required personal guarantees and collateral. Plaintiffs also allege other SBA lenders engaged in the same conduct, which undermines the required hallmarks of substantial assistance or encouragement. *Id.* ¶ 26. Plaintiffs' allegations related to ordinary lending activities fail to satisfy the substantial assistance element of an aiding and abetting claim.

### C. Plaintiffs Do Not Adequately Allege Fraud, Agreements, or Overt Acts Required for Conspiracy to Commit Fraud (Count III).

Conspiracy requires: "(1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result." *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1141 (10th Cir. 2006). Plaintiffs' allegations fall short of these requirements.[11]

**No actionable underlying fraud**. Conspiracy is a derivative tort requiring an underlying actionable tort. *See, e.g.*, *Puttuck v. Gendron*, 199 P.3d 971, 978 (Utah Ct. App. 2008) (requiring dismissal of conspiracy claim if plaintiffs fail to plead other torts); *Big Thirst, Inc.*, 657 F. Supp. 3d at 925 (applying the same rule in Texas); *EMC Nat'l Life Co.*, 2011 WL 13229648, at *13

---

[11] The same elements apply in all states. *See also Big Thirst, Inc. v. Donoho*, 657 F. Supp. 3d 914, 926 (W.D. Tex. 2023); *EMC Nat'l Life Co. v. Emp. Benefit Sys., Inc.*, No. 4:10-CV-00143-JEG, 2011 WL 13229648, at *13 (S.D. Iowa Mar. 15, 2011); *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1096 (N.D. Cal. 2017); *Crystal Valley Sales, Inc. v. Anderson*, 22 N.E.3d 646, 653 (Ind. Ct. App. 2014); *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018); *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 642 (M.D. Tenn. 2006).

(same rule in Iowa); *MH Pillars Ltd.*, 277 F. Supp. 3d at 1096 (same rule in California); *Crystal Valley Sales, Inc.*, 22 N.E.3d at 653 (same rule in Indiana); *Honig*, 339 F. Supp. 3d at 1345 (same rule in Florida); *Freeman Mgmt. Corp.*, 461 F. Supp. 2d at 642 (same rule in Tennessee). Plaintiffs allege a conspiracy to commit fraud claim and must have a viable fraud claim to support conspiracy. Without an adequately pled fraud claim, their conspiracy claim must be dismissed.

**No express or implied agreement to commit fraud.** The Complaint relies on vague assertions "upon information and belief" that WaterStation and Celtic made "agreements" to accomplish an "unlawful purpose." Compl. ¶ 118. However, Plaintiffs do not identify any single detail of the alleged agreements, such as the specific individuals who reached an agreement, how or when any agreement was formed, or the terms or roles of each alleged conspirator. *See generally* Compl.; *see also Moldenhauer v. FDIC*, No. 2:09-CV-00756 TS, 2010 WL 1064422, at *3 (D. Utah Mar. 18, 2010) (dismissing conspiracy claim because of conclusory "pattern and practice" allegations); *McBryde v. Freedom Mortg.*, No. A-22-CV-01038-RP, 2023 WL 2959869, at *5 (W.D. Tex. Apr. 14, 2023) (dismissing civil conspiracy claim where the allegations were "inadequate to allege the meeting of the minds necessary to sustain a civil conspiracy claim"). Absent such allegations, Plaintiffs cannot satisfy the first three elements of a conspiracy claim and it must be dismissed.

**No particularized overt act.** Plaintiffs reference Celtic's lending activities as purported overt acts, but other than conclusory, unsupported allegations, they do not allege Celtic engaged in those acts in furtherance of a specific agreement to defraud. Compl. ¶¶ 69–84, 118–20. Routine lending activities, such as underwriting, approving, and funding loans, do not constitute overt acts in furtherance of a conspiracy absent plausible allegations of unlawful purpose or knowledge. *See, e.g.*, *Condor, S.A. v. Plurinational State of Bolivia*, 352 So. 3d 921, 927 (Fla. Dist. Ct. App. 2022)

21

("Far from a conspiracy, this is a common, rather routine, business practice."); *Roberson v. Bank of N.Y. Mellon*, No. 3:17-CV-00190, 2018 WL 3091209, at \*7 (S.D. Tex. May 23, 2018), *R&R adopted*, 2018 WL 3068873 (S.D. Tex. June 21, 2018) (conspiracy claim fails as disconnected circumstances are "just as consistent with lawful purpose as with unlawful undertaking") (citation omitted)).

Moreover, Plaintiffs do not allege facts showing that Celtic was or should have been aware that Celtic took substantial steps in furtherance of a conspiracy. "[A]n actionable civil conspiracy exists only as to those parties who are aware of the intended harm or proposed wrongful conduct at the outset of the [] agreement." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). Here too, the Complaint lacks well-pleaded allegations that Celtic knew of WaterStation's alleged fraud from the start or took any overt, supporting steps for the fraud. Plaintiffs' allegations do not plausibly suggest that Celtic engaged in any conduct beyond ordinary commercial activity in support of the Scheme.

###### D. Plaintiffs Do Not Allege a Duty or Breach Sufficient to State a Claim for Negligence or Breach of Fiduciary Duty (Counts IV and V).

####### 1. Negligence Is Deficiently Pled and Barred by the Economic Loss Rule.

To state a claim for negligence, Plaintiffs must allege: (1) the existence of a duty owed by the defendant to the plaintiff; (2) breach of that duty; (3) proximate causation; and (4) resulting damages. *Gonzalez v. Russell Sorensen Constr.*, 279 P.3d 422, 428 (Utah Ct. App. 2012).[12] Plaintiffs' negligence claim fails to allege the requisite elements and under other legal principles.

---

[12] All states follow the same elements. *John B. v. Superior Ct.*, 38 Cal. 4th 1177, 1188 (Cal. 2006); *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 599 (Tenn. Ct. App. 2001); *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 167 (Ind. Ct. App. 1998); *Bartsch v. Costello*, 170 So. 3d 83, 86 (Fla. Dist. Ct. App. 2015); *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 713 (Iowa 2016).

**Celtic owes no duty to Plaintiffs.** In all states, the arms-length relationship between a bank-lender and its borrower customer lies in contract and does not give rise to a tort duty. *See, e.g.*, *DeBry v. Valley Mortg. Co.*, 835 P.2d 1000, 1006 (Utah Ct. App. 1992) (lender carrying out its ordinary lending activities owes no duty to unrelated parties); *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 898 (2013), *as modified on denial of reh'g* (Mar. 7, 2013) (financial institution owes no duty to a borrower if it does not exceed the scope of its conventional role as a mere lender of money); *see also supra* at 13 (citing additional cases for the proposition that an arms-length lender ordinarily owes no fiduciary or disclosure duty to a borrower). Plaintiffs cannot fabricate a non-existent duty with generic allegations.

Plaintiffs make two unavailing contentions to support the existence of a duty. First, Celtic allegedly had "specialized knowledge" of the "stringent and specific SBA requirements" and "provided [loan] advice to Plaintiffs"—this "position of trust" created a duty of care to Plaintiffs. Compl. ¶¶ 125–27. Second, Celtic allegedly had a duty "to ensure that Plaintiffs' loan applications were compliant with SBA regulations and guidelines." *Id.* ¶ 128. Neither allegation offers any basis to depart from the rule that a lender owes no duty of care in a lender/borrower relationship. Celtic's conduct—*e.g.*, providing loan advice and SBA loan compliance—are ordinary aspects of Celtic's role as a lender engaged in arms-length SBA loan transactions. All SBA lenders advise prospective borrowers on how "their loans would be accepted by the SBA," and must—not by tort law, but from the terms of its agreements with the SBA and by regulation—comply with SBA regulations and guidelines. Compl. ¶ 126.

**No breach of any duty that caused any damage.** Even if Plaintiffs could plausibly allege a tort duty, they fail to identify any specific breach or deviation from the standard of care applicable to lenders—nor have they alleged facts showing that Celtic caused their alleged damages. *Supra*

23

at 22, n. 12 (citing various cases setting forth the required elements of duty, breach, causation, and damages to maintain a negligence claim). Plaintiffs merely complain that Celtic approved loans, disbursed funds which Plaintiffs voluntarily invested, and sought to collect amounts due under the contractual terms. *See, e.g.*, Compl. ¶¶ 63, 87, 92. These allegations do not constitute a breach of any cognizable duty, nor do they satisfy causation. Plaintiffs' frustration with their investments does not convert ordinary lending activity into actionable negligence.

**Claim barred by economic loss rule.** Where, as here, Plaintiffs seek recovery of purely economic losses that arise from a contractual relationship, the contractual relationship controls, and Plaintiffs cannot recover in tort. *See, e.g.*, *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 435 P.3d 193, 196 (Utah 2018) (confirming that the economic loss rule bars actions in tort when a contract exists between the parties; declining to find a fraud exception because it "would undermine the central premises of the economic loss rule"); *Guideone Ins. Co. v. U.S. Water Sys. Inc.*, 950 N.E.2d 1236, 1245 (Ind. Ct. App. 2011) (under the economic loss rule, plaintiff's remedy lies in contract law for purely economic losses); *Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 503 (Iowa 2011) (same for Iowa); *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 920 (Cal. 2022) (holding similarly in California); *Charter Cent., LLC v. QBE Ins. Corp.*, No. 3:24-CV-423-TAV-JEM, 2025 WL 2024910, at *4 (E.D. Tenn. July 18, 2025) (no negligence claim where the only duty breached arises in contract); *Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*, 244 So. 3d 383, 394 (Fla. Dist. Ct. App. 2018) (negligence claim for economic losses only justified in extraordinary circumstances involving a special relationship or personal injury or property damage). This principle applies with equal force here. Plaintiffs seek only economic damages—*e.g.*, loan balances, interest, fees, and investment losses—arising from transactions governed by written contracts. Compl. ¶¶ 131–32. Their remedies (if any) lie in contract, not in tort.

24

## 2.    Plaintiffs Fail to Plead a Viable Breach of Fiduciary Duty (Count V).

Plaintiffs' breach of fiduciary duty claim is even less tenable. In all states, to maintain a breach of fiduciary duty claim, Plaintiffs must allege: (1) the existence of a fiduciary relationship, (2) breach of the fiduciary duty, (3) causation, and (4) damages. *See, e.g.*, *Greene v. Mongie*, 564 P.3d 536, 543 (Utah Ct. App. 2025).[13]

**No fiduciary relationship.** It is well-settled that no fiduciary relationship exists between a lender and its borrower in an ordinary lending transaction absent facts demonstrating a special relationship or circumstances. *Supra* at 13 (citing cases for the proposition that an arms-length lender ordinarily owes no fiduciary duty to a borrower); *see also Hussein v. UBS Bank USA*, 446 P.3d 96, 104 (Utah Ct. App. 2019) (dismissing claim because a bank and its customer involved in a business relationship, transacting loans "at arm's length," does not establish a fiduciary relationship); *Bell*, 2017 WL 6761770, at *7 (no fiduciary relationship between borrower and lender in Texas); *Careaga v. NewRez LLC*, No. 2:21-cv-05314-FLA (PVCx), 2023 U.S. Dist. LEXIS 33265, at *10–*11 (C.D. Cal. Feb. 28, 2023) (same); *Kolb v. Naylor*, 658 F. Supp. 520, 526 (N.D. Iowa 1987) (debtor-creditor/borrower-lender relationship does not ordinarily create a fiduciary duty); *Jaffri*, 26 N.E.3d at 639 (same rule in Indiana); *Wilson*, 77 F. Supp. at 1223 (same rule in Florida); *Sutton*, 2025 2025 WL 1868078, at *8 (same rule in Tennessee).

Plaintiffs allege a single generic and conclusory allegation that they "placed trust and confidence in Celtic" based on its "superior access to information and superior knowledge and expertise." Compl. ¶ 136. These circumstances exist in every borrower-lender relationship and do

---

[13] Other states follow the same elements. *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 215 (5th Cir. 2018) (applying Texas law); *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1223 (S.D. Fla. 2015); *Jaffri*, 26 N.E.3d at 639 (applying Indiana law); *Faber v. Ciox Health, LLC*, 331 F. Supp. 3d 767, 780 (W.D. Tenn. 2018); *Doyle v. Otto*, 942 N.W.2d 2 (Iowa Ct. App. 2020); *Amtower v. Photon Dynamics, Inc.*, 71 Cal. Rptr. 3d 361, 377 (Cal. Ct. App. 2008).

not establish a fiduciary duty. *Huntington Mortg.*, 703 N.E.2d at 167 (refusing to find a fiduciary duty in a lender/borrower relationship based on the bank's "superior knowledge and expertise," control over the funds paid and insurance, and duty to provide an accounting and verify escrow because they "would generally be part of almost any borrower and lender relationship"). There are no allegations that Celtic exercised extraordinary influence or excessive control over their businesses, entered into any other special relationship, or mutually intended to transform a traditional debtor-creditor relationship into a fiduciary relationship.

**No breach of a fiduciary duty that caused any damage.** Even if Plaintiffs could plausibly allege the existence of a fiduciary duty, Plaintiffs fail to sufficiently allege causation. *See, e.g.*, *Giles v. Min. Res. Int'l, Inc.*, 338 P.3d 825, 828 (Utah Ct. App. 2014) (alleged breach of fiduciary duty must have "actually caused the alleged damages"); *Silver Crown Invs., LLC v. Team Real Est. Mgmt., LLC*, 349 F. Supp. 3d 1316, 1331 (S.D. Fla. 2018) (breach of fiduciary duty requires allegations "that the breach proximately caused the plaintiff's damages"). Rather, Plaintiffs point to various alleged oral omissions showing that "Celtic Bank . . . guid[ed] them through the loan process," which ultimately led Plaintiffs to "incur[] substantial losses." Compl. ¶¶ 139–141. But Plaintiffs fail to plausibly allege with any detail that any part of Celtic's processing of their loans caused Plaintiffs' alleged losses. To the contrary, Plaintiffs concede that WaterStation referred them to Celtic, they heard about WaterStation from other non-Celtic sources that led them to invest, and allegedly suffered losses caused by Wear's fraudulent scheme. *Id.* ¶¶ 29–42, 47–48.

## III. Plaintiffs' Statutory Claims All Fail.

### A. Plaintiffs' RICO Claim Fails For Lack of Standing and Failure to Allege the Requisite Elements (Count VI).

A RICO claim under 18 U.S.C. § 1962(c) and (d) seeks to address sophisticated, ongoing criminal enterprises, not to penalize ordinary business activities or isolated instances of alleged

26

fraud. *United States v. Knight*, 659 F.3d 1285, 1288 (10th Cir. 2011) ("RICO is a powerful statute" for sophisticated large scale criminal activity, not intended to reach "garden-variety fraud or criminal conduct"). Plaintiffs fail to allege facts to justify imposing the extraordinary civil and criminal liability of RICO on a regulated SBA lender engaged in routine lending transactions.

### 1. Plaintiffs Lack Standing to Assert a RICO Claim.

**No PSLRA Standing.** Plaintiffs' RICO claim falls within, and is preempted by, the Private Securities Litigation Reform Act of 1995 ("PSLRA"). "The PSLRA amended RICO to provide that 'no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO].'" *Bixler v. Foster*, 596 F.3d 751, 759 (10th Cir. 2010) (affirming dismissal of RICO claim as barred by the PSLRA); *see also Boulware v. Baldwin*, No. 2:11-CV-762 TS, 2012 WL 1412698, at *12 (D. Utah Apr. 23, 2012) (dismissing RICO claim for fraud "undertaken in connection with the purchase of a security"). Plaintiffs assert securities fraud claims in Counts VII and VIII. Compl. ¶¶ 166–194. They also repeatedly allege their WaterStation investments to be "securities." *Id.* ¶¶ 169–170 ("each investment transaction is a security"); *id.* ¶¶ 151–55 (alleging racketeering activity as the transmission of loan documents and wire transfers for the purchase of franchises); *id.* ¶ 100 (same). Because Plaintiffs' allegations fall squarely within the scope of the PSLRA, the PSLRA flatly bars the RICO claim.

**No RICO Standing.** Plaintiffs cannot show *they* were "injured by reason of" Celtic's SBA lending activities. *Bixler*, 596 F.3d at 756 (citing 18 U.S.C. § 1964(c)). Plaintiffs' injuries must be proximately caused by the RICO violation. *Id.* Plaintiffs contend that Celtic harmed *them* by allegedly defrauding *the U.S. government* into guaranteeing the loans it issued to Plaintiffs so they could offer lower prices and attract more business from more customers. Compl. ¶¶ 83–84. The U.S. Supreme Court previously rejected imposing RICO liability in identical circumstances. *Anza*

27

*v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–58 (2006) (noting that the "direct victim" of "defrauding the New York tax authority and using the proceeds from the fraud to offer lower prices designed to attract more customers" was State of New York). Here too, Plaintiffs allege that Celtic "legitimize[d] ineligible SBA loans" to obtain more business, but the direct victim of any alleged fraud is the federal government (which guaranteed the loan), not Plaintiffs (who received it). Compl. ¶¶ 100, 34–36. Under *Anza*, this indirect causal connection cannot support a RICO claim.

**No direct liability.** Plaintiffs' claim also fails because it relies on imputing the actions, statements, and knowledge of a single mid-level employee, Foster, to Celtic under vicarious liability and respondeat superior theories. *See generally* Compl. But courts are reluctant to extend these theories to RICO claims absent evidence that the employer was a central figure in, or a direct beneficiary of, the alleged racketeering activity. *See, e.g.*, *Bank v. Rill*, No. CIV-07-417FHS, 2008 WL 1766730, at \*3 (E.D. Okla. Apr. 14, 2008) (noting the Tenth Circuit has not directly addressed whether an employer can be held vicariously liable under RICO, but finding vicarious liability inconsistent with RICO's purpose) (collecting cases). Without allegations of direct participation or benefit, there is no basis to impose RICO liability on Celtic. *Laro, Inc. v. Chase Manhattan Bank (Nat'l Ass'n)*, 866 F. Supp. 132, 140 (S.D.N.Y. 1994) (no RICO liability because bank was not a "central figure" nor a beneficiary of the alleged fraud—it was "a victim of . . . [the] diversion of construction funds from the property that secured the Chase loan"), *aff'd* 60 F.3d 810 (2d Cir. 1995). Here, Plaintiffs allege no facts showing that Celtic was the "central figure" in the fraud, nor that it otherwise directed, controlled, or benefited from Foster's alleged conduct. To the contrary, Foster's alleged conduct (*e.g.*, approving unsecured or fraudulent loans) has caused Celtic millions of dollars in losses that Celtic may never recoup—it certainly did not benefit. Compl. ¶¶ 66. There is no basis to impose RICO liability here.

### 2.    Plaintiffs Fail to Plead the Elements of a RICO Claim.

To maintain a RICO claim under 18 U.S.C. § 1962(c), Plaintiffs must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Nielsen v. The Patriot Grp., LLC*, No. 1:15-CV-00137, 2016 WL 407073, at *2 (D. Utah Feb. 2, 2016). Plaintiffs fail at each.

**No racketeering activity.** Plaintiffs allege that the transmission of loan documents for their failed investments constituted mail or wire fraud, but Plaintiffs do not "plead each of the elements under 18 U.S.C. § 1341" with particularity under Rule 9(b). *Id.*, at *3 (requiring "(1) scheme or artifice to defraud or obtain property [through] . . . [materially] false representations; (2) intent to defraud; and (3) interstate wire communications to execute the scheme."). Here, Plaintiffs' allegations fail to meet these requirements. None of the communications show any plausible intent to obtain property through false representation; rather, each appears to be an ordinary SBA loan document or related communication. Compl. ¶ 100; Shaw Decl. ¶¶ 7, 8, 13, 16, 26, 27, 45.

Even if something were false in those documents, "[w]ire fraud is not committed simply by sending false statements through email . . . the emails must have been used to further a scheme to defraud through false pretenses." *Nielsen*, 2016 WL 407073, at *4. Plaintiffs' conclusory speculation about Celtic's intent is both implausible and unsupported with particular facts. Plaintiffs offer the dates and certain details of eight specific communications, *see* Compl. ¶ 100, but they do not allege who sent them, and even if they had, those communications relate to only four of the nine company plaintiffs. The other five company plaintiffs and their owners allege nothing at all. *Nielsen*, 2016 WL 407073, at *4 (finding no plausible wire fraud where "no facts are pled that these individuals relied upon or were deceived by the enumerated e-mails").

**No participation in an enterprise.** Courts limit RICO liability to those who have "*some*

part in directing the enterprise's affairs." *Albright v. Attorney's Title Ins. Fund*, 504 F. Supp. 2d 1187, 1205 (D. Utah 2007). Where a company does "nothing more than provide their regular services," such as preparing loan documents and issuing loans, then there is "no evidence suggesting the defendants directed any part of the alleged RICO enterprise." *Id.* (quoting *BancOklahoma Mortg. Corp.*, 194 F.3d at 1101). Plaintiffs allege that WaterStation, Celtic and other SBA lenders, and Foster are an "association-in-fact," and that Celtic's role was to "solicit[] and process[] loans through the SBA's 7(a) program," to obtain guarantee approval from the federal government, and then to transmit the loan funds to WaterStation. Compl. ¶ 94(e). But these activities are Celtic "simply conducting the defendant's own affairs," not the affairs of an "enterprise." *Spence v. Basic Rsch.*, No. 2:16-CV-925-CW, 2018 WL 1997310, at *2 (D. Utah Apr. 27, 2018). Plaintiffs do not allege any facts from which the Court could reasonably infer that Celtic had any part in directing or managing the allegedly fraudulent WaterStation scheme.

**No pattern of racketeering activity.** To establish a RICO pattern, Plaintiffs must allege predicate acts that "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Where the Scheme has ended, Plaintiffs must meet the test for closed-ended continuity, which considers both the duration and the extensiveness of the alleged racketeering activity. *Johnson v. Heath*, 56 F.4th 851, 860 (10th Cir. 2022). Courts evaluate the extensiveness of the alleged racketeering scheme with factors such as: (1) the number of victims, (2)-(3) the number and variety of racketeering acts, (4) the distinctness of injuries, (5) the complexity and size of the scheme, and (6) the nature or character of the enterprise. *Id.*

Here, Plaintiffs base their RICO claim on a limited number of ordinary SBA loans issued by Celtic to ten plaintiff companies over a two-year period, all relating to a single franchise investment program that failed due to a third-party's fraud. Plaintiffs do not allege a large or

30

complex scheme, a significant number of victims, or a variety of predicate acts. Nor do they allege the Scheme required "extensive planning or management," as the facts pled solely involve routine SBA lending activity. *Id.* at 861. Plaintiffs' RICO claim must be dismissed in its entirety.

### B.     Plaintiffs' Conclusory Allegations Do Not Satisfy Section 10(b)'s High Bar (Count VII).

For a Section 10(b) claim, Plaintiffs must allege: (1) a false or misleading statement of material fact; (2) made in connection with the purchase or sale of securities; (3) scienter (intent to defraud or recklessness); (4) reliance; and (5) damages resulting from that reliance. *TDC Lending LLC v. Priv. Cap. Grp., Inc.*, 340 F. Supp. 3d 1218, 1225 (D. Utah 2018).[14] Rule 9(b)'s heightened particularity requirements apply, and the PSLRA further requires that Plaintiffs "specify each statement alleged to have been misleading," "the reasons why the statement [was] misleading," and "particular[] facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at 1224 (citing 15 U.S.C. § 78u–4). Plaintiffs' allegations do not meet this high bar.

**No actionable false or misleading statement or omission.** Plaintiffs allege as a group that, in connection with their WaterStation investments, Celtic misrepresented that the investments satisfied SBA eligibility and Plaintiffs' qualifications for an SBA 7(a) loan. Compl. ¶ 172. They further claim that Celtic "withheld information about or misrepresented the risks associated with WaterStation investments" by describing WaterStation as "a great investment opportunity." *Id.* Plaintiffs fail to identify the alleged withheld information or misrepresented risks—Plaintiffs appear to contend that the mere fact that Celtic agreed to issue them a loan for an investment that

---

[14] Notably, Section 10b claims may only be brought against those who have "ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Cap. Grp. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). As Plaintiffs fail to identify any specific false statements at all, they fail to show why Celtic would be liable for such statements.

ultimately failed should qualify as a misrepresentation, but "[t]he securities laws are not meant to provide investors with broad insurance against market losses[.]" *In re Williams Sec. Litig. WCG Subclass*, 558 F.3d 1130, 1137 (10th Cir. 2009) (citation omitted). Ultimately, Plaintiffs fail to allege any specific "statement" made to any of the Plaintiffs in particular, by any identified speaker, at any specific time, of a material present fact. Nor do Plaintiffs allege why any statement was misleading, or any duty to disclose any of the allegedly omitted risks or information. *See TDC Lending LLC*, 340 F. Supp. 3d at 1226 (Absent allegations of "a duty to disclose any of the alleged omissions, [Plaintiffs'] allegations cannot support an actionable securities fraud claim."). These general statements of optimism about the future performance of the investments are not actionable. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997) ("Vague, optimistic statements are not actionable because reasonable investors do not rely on them in making investment decisions."); *see also supra* at 12–15.

**No scienter.** The Tenth Circuit instructs that "[a]n inference of fraudulent intent must be more than reasonable or permissible—it must be cogent and compelling. Thus, the complaint suffices only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1237 (10th Cir. 2016), *as amended* (July 6, 2016) (citation modified); 15 U.S.C. § 78u–4(b)(2)(A). Here, Plaintiffs make the conclusory allegation that Celtic acted "intentionally, knowingly, or recklessly," to further a "fraudulent lending scheme . . . designed to deceive innocent investors into borrowing SBA loans to purchase WaterStation franchises." Compl. ¶¶ 171–72. But Plaintiffs offer *no facts* in support of this alleged intent, much less facts that would give rise to a *strong inference* of fraudulent intent, rather than the far more plausible inference that Celtic acted as an ordinary SBA lender in the business of offering SBA

32

loans, and making "benign optimis[tic]" statements related to its lending activities, with a "generalized corporate motive." *Anderson*, 827 F.3d at 1239. Even crediting the contention that Celtic "failed to give adequate weight to financial red flags" about the WaterStation investments, as Plaintiffs allege, this cannot support a Section 10b claim. *Id.* at 1238.

**No reliance.** Plaintiffs themselves allege that they heard about the WaterStation investment opportunity "from a variety of sources," and that *WaterStation referred them to Celtic* (not vice versa). Compl. ¶¶ 47–48; *see also Cook v. Baca*, 512 F. App'x 810, 823 (10th Cir. 2013) (affirming dismissal of first amended complaint for failing to plead the necessary reliance elements of a 10b-5 claim); *Combs v. SafeMoon LLC*, No. 2:22-cv-00642-DBB-JCB, 2024 WL 1347409, at *14 (D. Utah Mar. 29, 2024) (dismissing Section 10b claim for failing to plausibly allege plaintiffs relied on any alleged misrepresentations). Plaintiffs do not make a plausible allegation that Plaintiffs decided to invest and suffered losses from the investments, specifically in reliance on *Celtic*'s statements, rather than information they received "from a variety of sources." Compl. ¶ 47. Celtic simply acted as an ordinary SBA lender by processing and issuing SBA loans. *Id.* ¶¶ 63–66.

**No loss causation.** "To plead loss causation, a plaintiff must allege facts showing a causal connection between the revelation of truth to the marketplace and losses sustained by the plaintiff." *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1154 (10th Cir. 2015); *Rycar Tr. v. Yates Fam. Invs.*, No. 2:23-CV-00732-TC-DAO, 2025 WL 2591489, at *15 (D. Utah Sept. 8, 2025) ("Any theory of loss causation would have to identify when the materialization or corrective disclosure occurred and link it to a corresponding loss." (citation modified)). Here, Plaintiffs fail to allege any factual support showing that their WaterStation investment losses (or resulting inability to repay their SBA loans) can be attributed to a misrepresentation or omission *by Celtic*, rather than by the "myriad of other factors" that impacted their investment decisions. *Rycar Tr.*, 2025 WL 2591489,

33

at *15. Plaintiffs' alleged losses arose from the failure of their investment, not from a truth revealed to the marketplace that Celtic withheld. Plaintiffs' Section 10b claim fails.

### C.    Plaintiffs Cannot Allege a Violation of the UUSA (Count VIII).

This Court has held that "[t]he anti-fraud provisions of the [UUSA] mirror the language of § 10(b)." *Precision Vascular Sys., Inc. v. Sarcos, L.C.*, 199 F. Supp. 2d 1181, 1190 (D. Utah 2002). As Plaintiffs fail to state a claim under Section 10b, their UUSA claim also fails.[15]

### D.    Plaintiffs Fail to Allege the UCSPA Applies to Their Claims (Count IX).

To state a claim under the UCSPA, Plaintiffs must allege that "(1) a supplier (2) in connection with a consumer transaction, (3) knowingly or intentionally, (4) engaged in a deceptive act or practice." *Cordero v. Olson Assocs. P.C.*, 740 F. Supp. 3d 1117, 1133–34 (D. Utah 2024) (citing Utah Code Ann. § 13-11-4).

**No consumer transaction or supplier.** The business loans issued to Plaintiffs' businesses by an SBA lender are not "consumer transactions" covered by the statute. The UCSPA defines a "consumer transaction" as either a transaction "for primarily personal, family, or household purposes," or a transaction for a business opportunity that requires *both* the "expenditure of money or property by the person" *and* that the person "perform personal services on a continuing basis" for that opportunity. Utah Code Ann. § 13-11-3. Plaintiffs' investments do not fall under these categories—Plaintiffs do not plead anything at all suggesting that they "perform[ed] personal services" in relation to their WaterStation investments. In addition, and for a similar reason, Celtic is not a supplier under the UCSPA, because it does not "regularly solicit[], engage[] in, or enforce[] consumer transactions" as defined by the statute. *Id.*

---

[15] This claim also fails because Plaintiffs engaged in the alleged securities transactions in their home states, and the UUSA cannot be applied extraterritorially. *See infra* at p. 35.

34

**No particularized facts of unconscionability and knowingly or intentionally engaging in deceptive acts or practices.** Even if the UCSPA applied, this claim still fails for similar reasons as the other claims. *See Cotte v. CVI SGP Acquisition Tr.*, No. 2:21-CV-299, 2022 WL 464307, at *9 (D. Utah Feb. 15, 2022) (requiring UCSPA claims to be pled with particularity under Rule 9(b)); *id.* at *10 (for UCSPA unconscionability claims, Plaintiffs must allege facts that would rise to the level of "extreme unfairness" required to constitute unconscionability, which should "'shock the conscience' or engender a 'profound sense of injustice.'" (citation omitted)); *Martinez v. Best Buy Co.*, 283 P.3d 521, 523–24 (Utah Ct. App. 2012) ("Utah courts and courts employing Utah law have consistently recognized intent as an element of a UCSPA claim . . . Thus, [] to establish a violation of the UCSPA, the Martinezes were required to establish that [defendant] knowingly or intentionally engaged in deceptive acts or practices.").

**No extraterritorial application.** In any event, there is no reason to believe the UCSPA applies extraterritorially to cover Plaintiffs' allegations of harm in other states. "It is fundamental that a statute can have no extraterritorial effect." *U.S. Bond & Fin. Corp. v. Nat'l Bldg. & Loan Ass'n of Am.*, 17 P.2d 238, 239 (Utah 1932) (declining to apply Utah Securities Act to sales of securities made extraterritorially). Accordingly, "unless a statute gives a 'clear indication of an extraterritorial application, it has none.'" *Nevares v. M.L.S.*, 345 P.3d 719, 727 (Utah 2015); *see also Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-02432-WYD-KMT, 2013 WL 5448078, at *6 (D. Colo. Sept. 27, 2013) (noting a presumption against extraterritoriality applies to uniform consumer protection acts). Plaintiffs' UCSPA claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the motion should be granted and the Court should dismiss all claims against Celtic with prejudice for failure to state a claim.

35

DATED:  October 27, 2025                    **COHNE KINGHORN, P.C.**

                              By:    /s/ Matthew M. Boley
                                     Matthew M. Boley
                                     Jessie E. Dyer

                                     *Attorneys for Defendants*
                                     *Celtic Bank Corporation and Celtic*
                                     *Investment, Inc.*

                              -and-

DATED:  October 27, 2025                    **MCGUIREWOODS LLP**

                                     /s/ Jarrod D. Shaw
                                     Jarrod D. Shaw
                                     Anthony Q. Le

                                     *Attorneys for Defendants*
                                     *Celtic Bank Corporation and Celtic*
                                     *Investment, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of October, 2025, I filed the foregoing **Motion to Dismiss the Complaint** with the Clerk of the Court by using the electronic filing system, which will send a notice of electronic filing to counsel of record in the above-captioned civil action, including without limitation:

Christopher M. Von Maack
vonmaack@mvmleagal.com
Craig Hansen
hansen@mbmlegal.com
Eric K. Schnibbe
McNeill | Von Maack
236 S. 300 E.
Salt Lake City, UT  84111

Robert E. Linkin
rlinkin@munckwilson.com
Tri T. Truong
ttruong@munckwilson.com
Munck Wilson Mandala LLP
801 Las Cimas Parkway, Suite 300
Austin, TX 78746

/s/ *Jessie E. Dyer*
_____

37